UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DIXIE FUEL COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-326-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| STRAIGHT CREEK, LLC, et. al., | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) | **ORDER** |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Harlan Development Corporation has moved to dismiss Plaintiff Dixie Fuel Company's counterclaim against it. The parties have fully briefed the matter. Because the counterclaim fails to state a claim for unjust enrichment, the Court will grant the Motion to Dismiss. [R. 122.]

**I**.

This matter arises out of a contract dispute between Dixie Fuel and Straight Creek. On March 4, 2008, the two companies entered into a written coal supply contract that called for Straight Creek to deliver 15,000 tons of coal per month to Dixie until the end of September. [R. 76-2.] The purchase price of the coal was set at $49.00 per ton, and the agreement expressly stated that Straight Creek's obligations were non-assignable without written consent from Dixie Fuel. [*See id*; R. 11.] Straight Creek delivered coal to Dixie Fuel in March, but the parties disagree as to the quantity delivered. [Davis depo., R. 80-3 at 4; Bennett depo., R. 80-4 at 3.]

On April 30, 2008, Straight Creek and Harlan Development entered into an Asset Purchase Agreement. [R. 80-5.] On that same day, they also entered into a separate agreement

whereby Straight Creek transferred its rights and obligations under the coal contract with Dixie Fuel to Harlan. [R. 80-6.] Dixie Fuel, however, never consented to the assignment. [Bennet depo., R. 80-4 at 15-16, 26, 37; R. 11.] Dixie did not receive coal shipments from either Straight Creek or Harlan Development until July, when Harlan delivered about 4,000 tons of coal to Dixie. [James Justice depo., R. 80-18 at 2-3.] Dixie accepted the coal and issued checks to Harlan, but the checks were made payable to Straight Creek. [Bennett depo. R. 80-4 at 35-36; R. 76-3.] Harlan returned the checks claiming they should have been made payable in its name rather than to Straight Creek. When Dixie refused to pay Harlan directly, Harlan ceased further shipments. [R. 80-18.]

Dixie Fuel filed suit in September of 2008 alleging that Straight Creek breached the coal supply contract. [R. 1-3.][1] After removing to federal court, Straight Creek filed a third-party complaint against Harlan Development, alleging breach of the asset purchase agreement and bringing, among other claims, a claim for indemnification. [R. 7.] Harlan Development then asserted a claim against Dixie Fuel, demanding the contract price of the coal it delivered in July. [R. 10.] Dixie replied to the claim by denying Harlan Development's assumption of duties under the coal supply contract and claiming it had no contractual relationship with Harlan. [R. 11.]

On April 4, 2010, Dixie Fuel asked the Court for leave to file an amended complaint and to file a "cross-claim" against Harlan Development.[2] [R. 99.] Because the motion was unopposed and filed in compliance with the deadline in the Scheduling Order, the Court granted the motion.

---

[1] On August 30, 2010 the Court granted summary judgment in favor of Dixie Fuel on its breach of contract claim against Straight Creek. [R. 128.]

[2] Both parties agree that Dixie's claim against Harlan Development was incorrectly labeled a crossclaim, and should have been labeled a counterclaim.

2

[R. 116.] The new counterclaim alleges that Harlan was unjustly enriched when it resold coal that should have been delivered to Dixie at prices higher than the $49.00 in the Dixie-Straight Creek contract. [R. 118.] Dixie demands that Harlan "be required to disgorge all profits earned in excess of $49.00 per ton on sales of coal that would have been delivered to Dixie fuel during the March-September 2008 period but for Harlan'[s] breach of its contract with Straight Creek." [*Id.*]

Harlan filed a motion to dismiss the counterclaim, arguing that Dixie's claim is a compulsory counterclaim that should have been raised in Dixie's answer to Harlan's claim. Harlan further alleges that by failing to assert the counterclaim at the proper time, Dixie is barred from asserting it now. [R. 122] Harlan also moves to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6), alleging that Dixie fails to state a claim upon which relief can be granted because it did not properly plead a claim for unjust enrichment. [*Id.*] Finally, Harlan argues that Dixie Fuel is barred from asserting the counterclaim under the doctrines of unclean hands, estoppel, and laches. Because the Court finds that Dixie's unjust enrichment claim is not cognizable as a matter of law, the Court will dismiss on those grounds and will not address the affirmative defenses raised by Harlan.

## II.

In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

Recently, the Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009). Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible." *See Courier*, 577 F.3d at 630. According to the Court, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.).

**III**.

Dixie Fuel's counterclaim is a compulsory counterclaim that should have been raised in its answer to Harlan's claim. Its failure to assert the claim at the proper time, however, does not bar it from asserting the counterclaim with the court's permission. "A pleading must state as a counterclaim any claim that...the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim..." Fed. R. Civ. P. 13(a). Because Harlan had already filed a claim against Dixie Fuel, Harlan Development was "an opposing party." Neither party denies that Dixie Fuel's counterclaim arises out of the transaction or occurrence that is the subject matter of Harlan Development's claim. Thus, Dixie's claim is a compulsory counterclaim.

There is some support for Harlan's contention that a counterclaim is waived if not filed along with the answer. *See Crown Life Ins. Co. v. American National Bank and Trust Co. of Chicago*, 35 F.3d 296, 300 (7th Cir. 1994) ("Compulsory counterclaims...are waived when not

4

filed along with the answer."); *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 360 (7th Cir. 1990). There seems to be some confusion, however, as to whether a defendant who fails to raise a counterclaim in his answer is barred from asserting that claim for all time (i.e. in that litigation) or only in subsequent litigation. *See United Cent. Bank v. Maple Court, LLC*, No. 10C0464, 2010 WL 5345570 at *1 (E.D. Wis. Dec. 21, 2010) (holding that a defendant who failed to plead a compulsive counterclaim in its answer is not forever barred from asserting the claim and may amend with leave of court); *Heywood v. Western Reserve Life Assur. Co. of Ohio*, No. CV-06-2355-PHX-DGC, 2007 WL 625926 at *1 (D. Ariz. Feb. 27, 2007) (holding that Rule 13(a) is directed against a party who fails to assert a counterclaim in one action and then institutes a second action in which the counterclaim becomes the basis of the complaint). *But see Crown Life Ins. Co.*, 35 F.3d at 300 (holding that a defendant waived his counterclaim for all time by failing to raise it in his answer).

The Court is not aware of a case in this circuit addressing this exact issue, but considering the applicability of Rule 15,[3] holds that a compulsory counterclaim not raised in an answer cannot be raised in subsequent litigation but may be filed (is not waived) in the instant litigation with the Court's permission. Accordingly, Dixie Fuel did not waive the compulsory counterclaim when it failed to raise it in its answer to Harlan's claim. Instead, it was free to ask the Court for leave to amend. It did ask for leave to file the counterclaim, but incorrectly labeled the claim as a crossclaim. However, considering that Harlan Development could have objected to

---

[3] Fed. R. Civ. P. 15(a)(2) provides that if a party fails to amend his pleading more than 21 days after serving the pleading, he may amend it with leave of court. The Rule also indicates that leave should be freely given "when justice requires." In other words, a court should allow parties to amend their pleadings in the absence of undue delay, bad faith, dilatory motive, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

5

Dixie's motion to amend and did not, the Court cannot say that leave should not have been granted because of the mislabeling error. Thus, if the counterclaim is to fail, it is not because Dixie failed to raise the claim in its answer or because it incorrectly labeled the claim in its motion to amend.[4]

Harlan next argues that Dixie Fuel fails to state a claim for unjust enrichment because "Dixie Fuel never conveyed any benefit to Harlan Development." [R. 122.] The Court agrees. Dixie Fuel's claim states that Harlan agreed to fulfill Straight Creek's coal delivery obligations to Dixie Creek; that Harlan failed to fulfill Straight Creek's obligations and sold its coal on the open market at a price higher than the contract price of $49.00; and then concludes that "as a result of Harlan's failure to honor its contract with Straight Creek, Harlan was unjustly enriched, ultimately at the expense of Dixie Fuel." [R. 117.] Dixie does not expressly state what "benefit"

---

[4] There is no evidence to suggest that Dixie labeled its claim incorrectly in bad faith or in an effort to disguise the fact that it was moving to file a compulsory counterclaim that ideally should have been raised earlier. Because neither Straight Creek nor Harlan Development objected to the motion to amend, the Court will assume that the incorrect labeling of the claim was a mistake. With so many claims involved, it is not difficult to mislabel a claim. In fact, it appears that the Clerk of the Court incorrectly labeled Harlan Development's claim against Dixie Fuel as a "counterclaim" on the docket sheet. A counterclaim is a claim that a pleader has against an "opposing party." Fed. R. Civ. P. 13. Harlan Development is a third party defendant that was brought into the case by Straight Creek. Had it raised a claim against Straight Creek, that claim would have been a counterclaim, but its claim against Dixie Fuel was not. Rule 14(a)(2)(D) allows a third-party defendant to bring claims against the plaintiff that arise out of the same transaction or occurrence as the claim by the plaintiff against the third-party plaintiff. However, the Rule does not refer to those claims as "counterclaims," and since Dixie Fuel had not filed a claim against Harlan when Harlan filed its claim against Dixie, Dixie would not be considered an "opposing party." *See* 3 MOORE'S FEDERAL PRACTICE, §§ 14.02; 14.26 (Matthew Bender 3d ed.) (referring to claims brought pursuant to Rule 14(a)(2)(D) and stating that these claims "do not have commonly accepted names" and "ought to be referred to simply as 'Rule 14(a) claims'").

was rendered to Harlan Development.[5]  Neither does it allege that *it* conferred any benefit upon Harlan Development.  To survive a motion to dismiss, a pleader must do more than merely plead labels, conclusions, and the formulaic elements of a cause of action.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Mezibov v. Allen*, 411 F.3d. 712, 716 (6th Cir. 2005)).  In response to the motion to dismiss, Dixie does not try to argue that it conferred a benefit on Harlan.  Instead, it argues that this is not a requirement at all under Kentucky law, stating, "[S]uch an argument misapplies the first element of unjust enrichment by adding a requirement that the benefit be directly conferred on HDC by Dixie.  The only requirement is that the benefit be conferred 'at the plaintiff's expense.'" [R. 125 at 3.]

The Court agrees with Harlan Development that to state a claim for unjust enrichment the claimant must allege that it conferred a benefit on the defendant.  Although not always expressly stated by courts, the requirement that the benefit be conferred on the defendant *by the claimant* seems to always be a requirement in practice.  For example, in *Jones v. Sparks*, 297 S.W.3d 73 (Ky. Ct. App. 2009) the court does not expressly state that the benefit must be conferred by the plaintiff.  Instead it lists the elements as Dixie would: 1) a benefit must be conferred on the defendant at the plaintiff's expense; 2) resulting appreciation of the benefit by the defendant; and 3) inequitable retention of the benefit without payment for its value.  *Id*. at 78.  In the next

---

[5] In its counterclaim, Dixie did not specifically allege what the "benefit" was that Harlan received.  However, Dixie clarifies in its response to the motion to dismiss that the benefit was the opportunity Harlan had "of selling low-priced coal contracted to Dixie at higher prices to third parties." [R. 125 at 4.]

7

paragraph, however, the court finds that the trial court was correct in denying recovery under the theory of unjust enrichment because the *plaintiff* did not confer a benefit on the defendant.

Again, in *Durbin v. Bank of the Bluegrass*, No. 2005-CA-001292-MR, 2006 WL 1510479, at *3 (Ky. Ct. App. June 2, 2006), the Kentucky Court of Appeals confirmed a trial court's dismissal of a claim for unjust enrichment because the plaintiffs did not confer a benefit on the defendant. The court held:

> Unjust enrichment is based upon an implied contract, creating an obligation from the recipient of the benefits received to the one bestowing them, to compensate him for whatever outlay he has made in bestowing them...In this case, the [plaintiffs] do not allege that they advanced any money for the [defendant's] benefit. Rather their actions were solely for [a third party's] benefit. Consequently, they have failed to state a claim against the [defendant] for unjust enrichment.

*Id*. Kentucky district courts have expressly stated that the benefit must be conferred by the plaintiff. *See Mattingly v. Primerica Life Insurance Co.*, No. 06-479-C, 2007 WL 2792197 at *7 (W.D. Ky. Sept. 21, 2007) (explaining the first element and stating that "there must be 'a benefit conferred on the defendant by the plaintiff'") (citation omitted). Other district courts in this circuit also have expressly held that to recover for unjust enrichment, a plaintiff must prove that he conferred a benefit upon the defendant. *See Andersons, Inc. v. Consol, Inc*., 348 F.3d 496, 501 (6th Cir. 2003) (under Ohio law); *Lawyers Title Ins. Corp. v. United American Bank of Memphis*, 21 F. Supp. 2d 785, 805 (W.D. Tenn. 1998) (under Tennessee law); *Source One, USA, Inc. v. Challenge, Inc.*, No. 09-13275, 2009 WL 3464707, at *10 (E.D. Mich. Oct. 22, 2009) (under Michigan law). Accordingly, this Court holds that to state a claim for unjust enrichment, the plaintiff must allege that *it* conferred a benefit on the defendant.

The only other argument that Dixie Fuel makes on this point is that "the benefit

necessary for an unjust enrichment claim may be direct or indirect." [R. 125 at 3 (citing *In re Cardizem CD Antitrust Litigation*, 105 F. Supp. 2d 618 (E.D. Mich. 2000) and *U.S. v. Goforth*, 465 F.3d 730, 734 (6th Cir. 2006)).] The cases Dixie cites are not at odds with the idea that the claimant must confer a benefit on the defendant. These cases (neither using Kentucky law) merely stand for the proposition that a plaintiff need not confer the benefit *directly* on the defendant. In *Cardizem*, pharmaceutical manufacturers overcharged the public for a prescription drug. *Id*. at 622-23. Members of the public brought suit claiming that the pharmaceutical companies were unjustly enriched by the public's overpayment. *Id*. The court held that even though there was no privity between the plaintiffs and the defendants, the plaintiffs could still recover for the defendants' unjust enrichment. *Id*. at 668-671. Significantly, the plaintiffs in *Cardizem* specifically pled in their complaint that they conferred a benefit on the defendants. Their complaint stated that the "[p]laintiffs and the class have conferred upon [the defendants] an economic benefit in the nature of profits resulting from unlawful overcharges, to plaintiffs' and the class' economic detriment." *Id*. at 668-69. The *Cardizem* court also lists the first element in a cause of action for unjust enrichment as "*the plaintiff [must have] conferred a benefit upon the defendant*." *Id*. at 671 (citations omitted) (emphasis added).

In holding that the plaintiff need not confer a benefit directly on the defendant, the court also notes that "courts dismiss [unjust enrichment] claims only where the plaintiffs fail to allege facts showing that *they have bestowed some sort of benefit upon the defendant* that the defendant ought not keep in equity and good conscience." *Id*. (Citations omitted) (emphasis added). In *Goforth*, the court also acknowledged that a plaintiff need not confer a benefit on the defendant directly. However, it also expressly held that "to establish an unjust enrichment claim, a plaintiff

9

must have conferred a benefit upon the defendant." *Goforth*, 465 F.3d at 735 (citations omitted). The plaintiff's claim failed in that case only because it "conferred *no* benefit, directly or indirectly, on [the defendant]." *Id.* (emphasis added).

Dixie has failed to allege that it conferred a benefit on Harlan Development. Even if Dixie Fuel had properly pled the elements of unjust enrichment, the reality is that the facts of this case do not fit a cause of action for unjust enrichment. At its core, this case is about breach of contract. Dixie Fuel contracted with Straight Creek to receive 15,000 tons of coal per month. The Court has already found that Straight Creek breached that contract. [R. 128.] Harlan also promised to fulfill Straight Creek's obligations to Dixie Fuel, and it remains to be seen whether that contract was valid and whether it was breached. Dixie has continuously taken the position that it has no contractual relationship with Harlan. [R. 11 ("Dixie had no contract with Harlan," "While Harlan contracted with Straight Creek to fulfill Straight Creek's contract obligations to Dixie, Dixie was not a party to that or any other contract with Harlan," "Harlan's liability arises solely by and through its indemnification of Straight Creek").] While Dixie is correct that unjust enrichment applies in cases where there is no express contract, there must be *some* obligatory relationship between the parties. *See Lawyers Title Ins. Corp. v. United American Bank of Memphis*, 21 F. Supp. 2d 785, 806 (W.D. Tenn. 1998) (dismissing a claim for unjust enrichment because "[the defendant] has not been unjustly enriched by reason of any transaction between it and [the plaintiff]") (citing *Black v. Boyd*, 248 F.2d 156 (6th Cir. 1957)). Namely, the plaintiff must have conferred a benefit on the defendant.

"The word 'confer' means 'to bestow from or as if from a position of superiority' or 'to give.'" *MPW Indus. Services, Inc. v. Pollution Control Services, Inc.*, No. 2:02-CV-955, 2006

WL 640438, at *9 (S.D. Ohio March 9, 2006) (citation omitted). Dixie Fuel has not "bestowed" or "given" anything to Harlan Development.[6] Not surprisingly, it does not attempt to argue that it did. Instead, Dixie alleges that Harlan's benefit is the result of its breaching the contract it had with Straight Creek. [R. 117 ( "As a result of Harlan's failure to honor its contract with Straight Creek, Harlan was unjustly enriched, ultimately at the expense of Dixie Fuel.").] Where an express contract governs, unjust enrichment is not appropriate. This is so even when a third party (here, Dixie) bases its claim for unjust enrichment on another party's contract (here, the Harlan-Straight Creek contract). *See Detroit School Dist. v. URS Corp.*, No. 267715, 2006 WL 2089223, at *4 (Mich. Ct. App. July 27, 2006). Simply put, Dixie pled the wrong cause of action. It may be able to recover on the Harlan-Straight Creek contract as a third-party beneficiary, but it does not have a "reasonably plausible hope" of recovery against Harlan for unjust enrichment. Accordingly, Harlan Development's Motion to Dismiss [R. 122] is **GRANTED**.

This the 8th day of March, 2011.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

[6] While Dixie did offer checks to Harlan, those checks were made payable to Straight Creek, and Harlan returned the checks to Dixie. Therefore, there is no plausible argument that Dixie conferred a benefit on Harlan Development by giving it payment for the July coal delivery. [R. 76 at 2.]